UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER R. MARKS,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5454** |
| **SHERIFF RANDY SMITH, IN HIS CAPACITY AS SHERIFF OF THE PARISH OF ST. TAMMANY, ET AL.,**<br>    Defendants | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants.[1] The motion is opposed.[2] For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This is a case brought under 42 U.S.C. § 1983. On or about October 23, 2014, upon leaving her employment, Plaintiff, Jennifer Marks, alleges she stopped at Acadia Gas Station in Slidell, Louisiana to purchase a pack of cigars.[3] After leaving the gas station, Deputy Bryan Steinert conducted a traffic stop of the Plaintiff.[4] Deputy Samuel Hyneman arrived on the scene while Deputy Steinert searched the Plaintiff's vehicle.[5] Deputy Steinert found drug paraphernalia in the vehicle. Corporal Amore Neck then arrived on the scene to conduct a search of the Plaintiff's person. It is at this point that the parties' accounts of the incident diverge.

---

[1] R. Doc. 46.
[2] R. Doc. 52.
[3] R. Doc. 2 at ¶ 6.
[4] *Id.* at ¶ 5.
[5] *Id.* at ¶ 9.

1

The Plaintiff alleges Corporal Neck conducted "an illegal and unconstitutional full body cavity search at the traffic stop which amount to a sexual assault."[6] According to the Plaintiff, Corporal Neck "forced Ms. Marks to bend over while handcuffed, putting her hand down Ms. Marks' pants, and with her fingers, entering Ms. Marks' vagina and then separately, her rectum. Deputy Amore then checked Ms. Marks' feet and mouth without changing gloves."[7]

The Defendants' accounts, however, differ significantly from the Plaintiff's. Deputy Hyneman, who observed the search performed by Corporal Neck, provided testimony that the search was a "basic pat down" and Corporal Neck did not search the Plaintiff's body cavities.[8] Corporal Neck testified the search she conducted on the Plaintiff was a usual pat-down search, which did not include searching any of the Plaintiff's body cavities.[9]

The Plaintiff filed this lawsuit, bringing claims against the St. Tammany Parish Sheriff's Office and Sheriff Randy Smith in his official capacity under 42 U.S.C. § 1983 and other state-law causes of action. The Plaintiff also brings claims against Corporal Amore Neck, Deputy Samuel Hyneman, and Deputy Bryan Steinert in their individual capacities under section 1983 for violations of her Eighth and Fourteenth Amendment rights.[10]

Defendant Corporal Amore Neck filed a counterclaim against Marks, alleging the allegation in Marks's complaint are completely false and rise to the level of defamation.

---

[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11.
[8] R. Doc. 46-4 at 26–27.
[9] R. Doc. 46-5 at 15–16.
[10] Although the Plaintiff's Complaint states the officers used excessive force in violation of her Eighth Amendment rights, she appears to have changed her theory to excessive force under the Fourth Amendment in her opposition to the motion for summary judgment. The Court will analyze the Plaintiff's claim as being brought under the Fourth Amendment.

**STANDARD OF LAW**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "An issue is material if its resolution could affect the outcome of the action."[12] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the nonmoving party.[14] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[15]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[16] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[17]

---

[11] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[12] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[14] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[16] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[17] *Celotex*, 477 U.S. at 322–24 (Brennan, J., dissenting).

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) affirmatively demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[18] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[19] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[20] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[21] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[22] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after

---

[18] *Id.* at 331–32.
[19] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[20] *Celotex*, 477 U.S. at 332–33.
[21] *Id.*
[22] *Celotex*, 477 U.S. at 332–33, 333 n.3.

4

the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[23]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[24]

## ANALYSIS

In their motion for summary judgment, Defendants seek dismissal of the following: (1) causes of action under 42 U.S.C. § 1983 and all negligence claims against Sheriff Randy Smith; (2) all state-law claims against Sheriff Randy Smith; (3) claim for lost wages; (4) claims precluded by *Heck v. Humphrey*; and (5) claims protected by qualified immunity.[25] The Plaintiff "is not opposing dismissal of numbers (1)–(4)."[26] Accordingly, summary judgment with respect to those claims is granted. The remaining claims are against Corporal Amore Neck, Deputy Bryan Steinert, and Deputy Samual Hyneman in their individual capacities. In their motion for summary judgment, these

---

[23] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[24] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[25] R. Doc. 46-1 at 1.
[26] R. Doc. 52 at 2.

defendants argue Plaintiff's claims against them in their individual capacities should be dismissed, because they are protected by qualified immunity.[27]

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right."[28] As explained by the United States Supreme Court, "qualified immunity seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability."[29] In essence, qualified immunity "avoid[s] excessive disruption of government" by permitting officials to exercise their vested discretion without fear of civil liability."[30]

Although qualified immunity is nominally an affirmative defense, "the plaintiff has the burden to negate the defense once properly raised."[31]

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.[32]

In this case, because the Defendants have properly invoked the doctrine of qualified immunity,[33] the burden has shifted to the Plaintiff to show that the Defendants are not immune from suit in their individual capacities. In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-pronged inquiry.[34] First, the court must determine whether the plaintiff has "adduced sufficient evidence to

---

[27] R. Doc. 46-1 at 29.
[28] *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). *See also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).
[29] *United States v. Lanier*, 520 U.S. 259, 570 (1997) (internal quotation marks and citations omitted).
[30] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[31] *Brumfield*, 551 F.3d at 326. *See also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[32] *Id.* (quoting *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.")).
[33] *See* R. Docs. 13, 46.
[34] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

raise a genuine issue of material fact" suggesting the defendants violated an actual constitutional right.[35] Second, the court must determine whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct.[36] It is within the Court's discretion to decide which of the two prongs should be addressed first in light of the circumstances of the case.[37] A state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the clearly established legal rules that existed at the time of his or her actions.[38] This standard, even on summary judgment, "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[39]

The Court will first determine whether the second prong is met, asking whether the right that was allegedly violated was clearly established at the time of the incident.

### I.     Clearly Established Law

In this case, the Plaintiff alleges that her Fourth Amendment right to be free of the use of excessive force was violated when officers performed a body cavity search on the side of the road during a traffic stop.[40]

The Supreme Court explained "qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."[41] The Court must determine, under the second prong of the qualified immunity test, "whether the state of the law at the time of the state action gave [defendants] fair warning that their

---

[35] *Brumfield*, 551 F.3d at 326 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).
[36] *See id.*; *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citing *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011); *Pearson*, 555 U.S. at 230–33).
[37] *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).
[38] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).
[39] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citing *Brumfield*, 551 F.3d at 326). *See also Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).
[40] *See supra* note 10.
[41] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

alleged treatment of the plaintiff was unconstitutional."[42] The Supreme Court "does not require a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate."[43] "[C]learly established law should not be defined at a high level of generality" and "must be particularized to the facts of the case."[44]

Defendants argue the Plaintiff presents no binding Supreme Court or Fifth Circuit precedent to establish that a body cavity search at a traffic stop is unreasonable.[45] However, in the absence of controlling authority, the Court considers whether a "consensus of cases of persuasive authority" exists such that "no reasonable officer could have believed that his or her actions were lawful."[46] The factual circumstance from which the pre-existing constitutional right developed does not have to have "fundamentally similar" to the one before the Court for the purposes of qualified immunity.[47] Qualified immunity can be overcome if "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[48] Indeed, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[49]

The incident in this case occurred on October 23, 2014. By that time, in *Bell v. Wolfish*, the Supreme Court upheld as reasonable under the Fourth Amendment a federal detention facilities' requirement that all pretrial detainees expose their body cavities for visual inspection as part of a search conducted after visits with people from outside the

---

[42] *Id.* at 740.
[43] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotations omitted).
[44] *Id.* (internal quotations omitted).
[45] R. Doc. 68 at 5.
[46] *McClendon*, 305 F.3d at 329 (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).
[47] *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1003 (5th Cir. 2003).
[48] *Id.*
[49] *Id.* (quoting *Hope*, 536 U.S. at 741).

8

facility.[50] The Court, however, noted that its holding does not condone all body-cavity searches, and the reasonableness of a search requires balancing "the scope of the particular intrusion, the manner in which it is conducted, the justification of initiating it, and the place in which it is conducted."[51] The Fifth Circuit had noted that few searches are more intrusive than a body cavity search,[52] and "[t]he more intrusive the search, the heavier is the government's burden of proving its reasonableness."[53]

Further, ample persuasive authority with respect to the reasonableness of body cavity searches existed at the time of the incident.[54] A district court within this circuit also considered a strikingly similar factual scenario, and held no reasonable officer would have found a roadside body cavity search reasonable even if they "reasonably suspected that Plaintiff was concealing contraband in a body cavity" if "there were no exigent circumstances requiring the search to be conducted on the public roadside rather than at a medical facility."[55] In *Mary Beth G. v. City of Chicago*, the Seventh Circuit described strip searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission' . . . . In short, we can think of few exercises of authority by the state that intrude on the citizen's

---

[50] 441 U.S. 520 (1979).
[51] *Id.* at 559–60.
[52] *U.S. v. Caldwell*, 750 F.2d 341, 343 n.2 (5th Cir. 1984).
[53] *U.S. v. York*, 578 F.2d 1036, 1041 (5th Cir. 1978). Fifth Circuit precedent "plainly established [that] . . . [a] strip or body cavity search raises serious Fourth Amendment concerns." *Roe v. Tx. Dept. of Protective and Regulatory Servs.*, 299 F.3d 395, 409 (5th Cir. 2002). For additional Fifth Circuit precedent, see, e.g., *Elliot v. Lynn*, 38 F.3d 188 (5th Cir. 1994) (holding visual body cavity searches conducted in the view of others may be reasonable *if there were exigent circumstances*); *Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999) (holding a strip search of a male prisoner by a female officer in the absence of exigent circumstances could entitle [the plaintiff] to relief for a Fourth Amendment violation"); *Oliver v. Scott*, 276 F.3d 736, 745 n.13 (5th Cir. 2002) (recognizing that prisoners have a right to bodily privacy that provides limitations on the manner in which searches may be carried out). *See also Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) (upholding district court's finding that plaintiffs had a viable excessive force claim for a body cavity search that occurred on a public roadway).
[54] *See, e.g.*, *Martin v. City of San Antonio*, 2006 WL 2062283, at *7 (W.D. Tex. July 25, 2006) (collecting cases).
[55] *Martin*, 2006 WL 2062283, at *6.

9

privacy and dignity as severely as the visual anal and genital searches practiced here."[56] The Seventh Circuit has also noted "there are several cases which suggest that qualified immunity would not exist for a strip search conducted in public view."[57] The Tenth Circuit stated, "There can be no doubt that a strip search is an invasion of personal rights of the first magnitude."[58]

In this case, the alleged body cavity search was performed on the side of a public road, as opposed to being performed at a medical facility or in a private room. "One of the critical, and certainly most obvious, elements in the *Bell v. Wolfish* balancing inquiry into the reasonableness of a strip search is the place in which it is conducted."[59] Viewing the evidence in the light most favorable to the Plaintiff, even if the officers reasonably suspected the Plaintiff was concealing contraband in a body cavity, there were no exigent circumstances requiring such a search be conducted on a public road.

The Supreme Court's decision in *Bell v. Wolfish*, Fifth Circuit precedent, and other persuasive authority clearly established by October of 2014 that no reasonable officer would have believed the manner of the alleged search conducted in this case to be reasonable.

## II. <u>Violation of a Constitutional Right</u>

The Court must now address whether the Plaintiff has "adduced sufficient evidence" to raise a genuine issue of material fact suggesting the Defendants violated a constitutional right. In this case, the Plaintiff alleges claims of excessive force against the Defendants.[60]

---

[56] 723 F.2d 1263, 1272 (7th Cir. 1983).
[57] *Kraushaar v. Flanigan*, 45 F.3d 1040, 1054 n.7 (7th Cir. 1995).
[58] 989 F.2d 393, 395 (10th Cir. 1993).
[59] *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981).
[60] *See* R. Doc. 2.

10

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[61] The inquiry into whether this right was violated requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."[62] Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case."[63] The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[64]

To prevail on her excessive force claims at trial, the Plaintiff would be required to establish that she suffered: "(1) an injury; (2) which resulted directly and only from a use of force that was clearly excessive; and (3) the excessiveness of which was clearly unreasonable."[65] However, at the summary judgment stage, the Plaintiff must merely point to facts and evidence that, when considered in the light most favorable to her, raise a genuine dispute as to whether she was the victim of excessive force.[66]

The Plaintiff claims there is a genuine issue of material fact as to whether the Defendants' actions in this case amount to an excessive and clearly unreasonable use of force.[67] As the Defendants pleaded the defense of qualified immunity in good faith, the burden has been shifted to the Plaintiff to direct the Court's attention to competent

---

[61] *Tolan*, 134 S. Ct. at 1865 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).
[62] *Id.* at 1865–66 (citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985); *Graham*, 490 U.S. at 396).
[63] *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 396); *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).
[64] *Graham*, 490 U.S. at 396–97. *See also Poole*, 691 F.3d at 628; *Ontiveros v. City of Rosenberg*, 564 F.3d 371, 382 (5th Cir. 2009).
[65] *Ontiveros*, 564 F.3d at 382. *See also Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam).
[66] *See Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013); *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).
[67] *See* R. Doc. 52 at 3.

summary judgment evidence sufficient to establish that a genuine issue of material fact does indeed exist. The Plaintiff presents her deposition, in which she contends Corporal Neck performed a body cavity search, and placed her hands "[i]n [the Plaintiff's] underwear, through [the Plaintiff's] lips and inside [the Plaintiff's] body."[68] The Plaintiff testified Corporal Neck took the Plaintiff's shoes and socks "completely off" to check "between [her] toes" before opening the Plaintiff's mouth, checking under her tongue, and feeling around her gums.[69] According to the Plaintiff, this body cavity search was conducted on the side of the road.

The Defendants, on the other hand, present the depositions of Corporal Neck[70] and Deputy Hyneman,[71] in which the officers detail a wholly different account of what occurred during the Plaintiff's traffic stop. Deputy Hyneman testified the search "was a basic pat down" during which Corporal Neck "check[ed] the collar, check[ed] the pants, waist area; pull[ed] the . . . bra up without . . . lifting the shirt . . . because a lot of times contraband [is] concealed inside of a brassiere; check[ed] the feet' [and] check[ed] the shoes."[72] Deputy Hyneman stated "[t]here was no search of the vagina" or "of the rectum."[73]

Corporal Neck testified she performed a usual pat-down search, "start[ing] from the head and . . . go[ing] down to the feet."[74] Corporal Neck stated that for this pat-down search, she felt inside the Plaintiff's hair, and checked her collar, arms, and bra area.[75]

---

[68] R. Doc. 52-2 at 3.
[69] *Id.* at 4.
[70] R. Doc. 46-5.
[71] R. Doc. 46-4.
[72] R. Doc. 46-4 at 26.
[73] *Id.* at 27.
[74] R. Doc. 46-5 at 15.
[75] *Id.*

12

Corporal Neck "continued down to [Plaintiff's] waistband, felt around her waistband, felt down each leg" and required the Plaintiff to remove her socks and shoes.[76] Corporal Neck denied having searched the Plaintiff's vagina, rectum, or mouth, and confirmed she found no contraband on the Plaintiff's person.[77]

On summary judgment, the Court looks at the evidence in the light most favorable to the non-moving party to determine whether there exists a genuine issue of material fact. This Court will not make credibility determinations regarding conflicting evidence at the summary judgment stage, as such a determination is left to the jury.[78] Given the vast discrepancy between the Plaintiff and Defendants' accounts of what occurred during the traffic stop, the Court finds that there are genuine issues of material fact with respect to whether the Defendants violated the Plaintiff's Fourth Amendment rights.[79] Summary judgment in qualified immunity cases is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[80] Accordingly, the Court denies summary judgment on the issue of whether the officers are entitled to qualified immunity for the alleged body cavity search that occurred.[81]

---

[76] *Id.*
[77] *Id.* at 15–16.
[78] *Delta & Pipe Land Co.*, 530 F.3d at 398.
[79] To be clear, the Court is not making a determination at this stage that the officers are not entitled to qualified immunity. The Court's ruling is only that genuine issues of material fact preclude the Court from making such a determination.
[80] *Tolan*, 134 S. Ct. at 1866; *see also Ougel v. Amite City Police Dept.*, 352 Fed. Appx. 941, 2009 WL 3698033 (5th Cir. 2009) (fact issue under with respect to qualified immunity precluded summary judgment); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (reversing a district court's grant of qualified immunity on summary judgment when officer's and plaintiff's versions of incident differed); *Harper v. Harris County, Tex.*, 21 F.3d 597, 602 (5th Cir.1994) (affirming denial of summary judgment based on qualified immunity where facts regarding officer's conduct were in dispute).
[81] The Fifth Circuit has jurisdiction to review a district court's denial of summary judgment with respect to qualified immunity "only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." *Hamilton*, 845 F.3s at 661 (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004)). The Fifth Circuit "lack[s] the power to review the district court's decision

## CONCLUSION

**IT IS ORDERED** that the motion for summary judgment with respect to dismissal of Plaintiff's 42 U.S.C. § 1983 claims against Sheriff Randy Smith in his official capacity is hereby **GRANTED**. Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Sheriff Smith in his official capacity and former Sheriff Strain are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to dismissal of Plaintiff's state-law claims against Sheriff Randy Smith in his official capacity is hereby **GRANTED**. Plaintiff's state-law claims against Sheriff Smith in his official capacity are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to Plaintiff's lost wage and economic damage claims is **GRANTED**. Plaintiff's lost wage and economic damage claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to Plaintiff's claims that are precluded by *Heck v. Humphrey* is **GRANTED**. Any claim attempting to collaterally challenge the Plaintiff's conviction for possession of marijuana by contesting the validity of her traffic stop and the search of her vehicle is **DISMISSED WITH PREJUDICE**.

---

that a genuine factual dispute exists and instead consider[s] only whether the district court erred in assessing the legal significance of conduct that the district court deemed sufficiently supported." *Id*. (internal quotations omitted).

**IT IS FURTHER ORDERED** that the motion for summary judgment with respect to the qualified immunity of Corporal Amore Neck, Deputy Bryan Steinert, and Deputy Samuel Hyneman in their individual capacities is **DENIED**.

**New Orleans, Louisiana, this 10th day of March, 2017.**

                                           _____
                                                     **SUSIE MORGAN**
                                     **UNITED STATES DISTRICT JUDGE**